IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY LYNN PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:15cv269-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.    INTRODUCTION

Kimberly Lynn Parker ("Plaintiff") filed an application for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381, *et seq.*, on August 3, 2012.   Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").   Following the hearing, the ALJ issued a decision finding that Plaintiff had not been under a disability since August 3, 2012, the date she filed her application.   Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision.    The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]   *See Chester v. Bowen*, 792 F.2d

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.      STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four.  At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical

---

[3]   *McDaniel* is a supplemental security income (SSI) case.  The same sequence applies to disability insurance benefits.  Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . .  No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-five years old on the date of the administrative hearing before the ALJ, and had completed some college coursework.  Tr. 299, 280.[5]  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since August 3, 2012, the application date[.]"  Tr. 14.  At Step Two, the ALJ found that Plaintiff suffers from the severe impairments of "obesity and degenerative changes of the cervical spine."  Tr. 14.[6] At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 15.  Next, the ALJ found that Plaintiff has the RFC to perform light work with additional exertional and non-exertional limitations.  Tr. 16.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "capable of performing past relevant work as a production assembler and companion/sitter.  This work does not require the performance of work-related activities precluded by the

---

[5]   Plaintiff's attorney appears to have erred in stating at the administrative hearing that Plaintiff has only a fifth grade education.  *See* Tr. 29.  Both in the consultative examination by Dr. Hayden, and in the Intake Report completed by Psychological Services at Auburn University, Plaintiff reported that she had completed high school and taken some college courses.  Tr. 299, 280.

[6]   The ALJ also found that Plaintiff's "medically determinable impairments of obsessive compulsive disorder ("OCD") and dysthymia, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  Tr. 14.

claimant's residual functional capacity[.]"  Tr. 20.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since August 3, 2012, the date the application was filed[.]"  Tr. 21.

## IV.   PLAINTIFF'S CLAIM

Plaintiff presents one issue for the court to consider in its review of the Commissioner's decision, arguing that the Commissioner's decision should be reversed because the ALJ failed "to fulfill her duty to fully develop the record by not obtaining an opinion from a qualified psychiatrist or psychologist as required by 42 USC § 421(h)." Pl.'s Br. (Doc. 12) at 3.  In support, Plaintiff argues that the ALJ's reliance on the evaluation and opinion of Dr. Estock in finding that Plaintiff's mental impairments are not severe was misplaced because "Dr. Estock's evaluation does not satisfy the requirement of 42 USC § 421(h)."  *Id.* at 4.  Hence, because the ALJ did not order a consultative mental examination, and because the ALJ erred in affording Dr. Estock's opinion "great weight," Plaintiff argues that the "ALJ's finding that the Claimant's mental impairment of obsessive compulsive disorder (OCD) and Dysthymia are not severe impairments is not supported by substantial evidence."  *Id.* at 5-6.

## V.   DISCUSSION

While "the ALJ has a basic duty to develop a full and fair record," the claimant always "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).  Plaintiff argues that, given her

diagnosis of OCD and other mental impairments and supporting evidence in the record, the ALJ was obligated under 42 U.S.C. § 421(h) to order a consultative mental examination. The statute states, in relevant part, that, "in any case where there is evidence which indicates the existence of a mental impairment," the ALJ may determine that the claimant is not disabled only if the ALJ "has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." The Eleventh Circuit has interpreted this provision to "require[] an ALJ to order a psychological consultation where there is evidence of a mental impairment." *Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (citing *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1986)).[7] Nevertheless, the Eleventh Circuit has also held that, although the "administrative law judge has a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

---

[7] *Sneed* itself casts doubt on the correctness of the Circuit's interpretation of § 421(h) in *McCall*. Specifically, *Sneed* refers to a Third Circuit case which held that "the normal requirement to order a psychiatric consult pursuant to § 421(h) does not apply to cases falling under the limited exception found in § 421(d), or cases heard by an ALJ." 214 F. App'x at 886 (citing *Plummer v. Apfel*, 186 F.3d 422, 423 (3d Cir. 1999)). Hence, it is arguable that *McCall*'s construction of § 421(h) requiring that the ALJ order a consultative examination does not apply in cases, like this one, which are heard by the ALJ. *See also Russell v. Astrue*, 742 F. Supp.2d 1355, 1371-72 (N.D. Ga. 2010) (distinguishing *McCall* and noting subsequent Eleventh Circuit authority appearing to question that decision); *id.* at 1371 n.15 (explaining why proper statutory construction of § 421(h) excludes its operation from cases heard by an ALJ pursuant to § 421(d)).

Thus, for example, in *Ingram*, the appellate court determined the ALJ did not err in failing to further develop the record regarding the claimant's mental capacity by ordering a consultative mental examination because the record before the ALJ—including evidence that the claimant's "depression was alleviated by medication" and other evidence of the claimant's intelligence—was sufficient for the ALJ to determine the extent of the claimant's mental impairments. *Id.*

The record before the ALJ in this case was sufficient to permit the ALJ to assess the severity of Plaintiff's OCD and dysthymia without the need for ordering a consultative examination by a qualified psychiatrist or psychologist. In particular, the Treatment Termination Summary from the Psychological Services Center at Auburn University indicates that Plaintiff attended forty-eight treatment sessions over two years; that Plaintiff responded well to treatment for her OCD and depression; that Plaintiff was able to manage her symptoms; that Plaintiff's OCD "checking" behaviors became limited and "no longer time consuming" during treatment; and that Plaintiff's "anxiety concerning the OCD was greatly reduced." Tr. 272. Indeed, during the course of treatment, "it became obvious that [Plaintiff] is very ambivalent about her obsessive-compulsive behaviors, and she does not seem overly distressed by the role they play in her life." Tr. 275. In general, when Plaintiff committed herself to attending treatment sessions and actively participating in prescribed therapies, she "made significant strides" with improving her overall mental health and, by the end of treatment, had "significantly decreased her OCD symptoms and her depression." Tr. 272-73. At the time Plaintiff's

8

treatment at Auburn terminated, she had a Global Assessment of Functioning score of 65. Tr. 273.[8]  Plaintiff's successful treatment for OCD, depression, and other mental health related impairments at Auburn University is the only treatment Plaintiff sought for those conditions indicated in the record before the ALJ.

Dr. Estock, a psychiatrist and state agency medical consultant, reviewed Plaintiff's medical records and completed a Psychiatric Review Technique.  Dr. Estock opined that Plaintiff has only mild restriction of daily activities, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and has experienced no episodes of decompensation.  Tr. 62.  Dr. Estock based this opinion on the Auburn University records discussed above and on Plaintiff's account of her activities of daily living, which indicated to Dr. Estock that Plaintiff "has no problems with memory, concentration, understanding, following instructions or getting along with others[,]" and that she "has no problems with her ability to handle stress or changes in routine."  Tr. 62.

The ALJ found Dr. Estock's opinion persuasive:

> My findings are in substantial agreement with those of Dr. Estock who also determined that the claimant was not disabled.  Although Dr. Estock did not examine the claimant, he provided specific reasons for his opinions

---

[8]  "The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults."  *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") 32 (4th ed. 2000)).  Although the current DSM has discontinued use of the GAF scale, *see* DSM-V 16, as the ALJ noted, at the time Plaintiff's GAF score was given at Auburn University, the DSM classified a GAF score between 61 and 70 as representative of mild symptoms, like "depressed mood and mild insomnia" or some difficulty in social, occupational, or school functioning, "but generally functioning pretty well[.]"  Tr. 15; *see* DSM-IV (text rev.) 34.

indicating that these opinions were grounded in the evidence of record.  I have given him great weight as a non-examining source who has program knowledge.  I find that the evidence received into the record at the hearing level did not provide any new or material information that would significantly alter findings about the claimant's functional limitations.  In fact, I also find that the claimant has mild limitations in the areas of activities of daily living, social functioning, and concentration, persistence or pace.  She also has experienced no episodes of decompensation which have been of extended duration.

Tr. 15.  The opinion of Dr. Estock, as a non-examining state agency medical consultant, was entitled to substantial consideration as relevant, expert opinion.  *See* 20 C.F.R. 404.1527(e)(2)(i)  &  416.927(e)(2)(i)  ("State  agency  medical  and  psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.").  Indulging Plaintiff's dubious argument that § 421(h) even applies in this instance, Plaintiff cites no authority for her proposition that the ALJ's reliance on Dr. Estock violated that provision of the statute.  Other courts have concluded that an ALJ's reliance on a state agency medical consultant's review, like that of Dr. Estock, was sufficient to satisfy any requirement imposed by the statute even where the ALJ did not order, as Plaintiff urges should have been done in this instance, a consultative psychological examination.  *See, e.g., Harris v. Colvin*, Civ. No. 13-481-KD-B, 2014 WL 584420, at *10 (S.D. Ala. Nov. 12, 2014) (citation omitted) ("In this case, Plaintiff is correct that the ALJ did not order a consultative mental examination. However, the record does contain the opinion of State Agency psychologist Dr. Joanna Koulianos, Ph.D., who reviewed Plaintiff's medical records and completed a Psychiatric

Review Technique and a Mental RFC Assessment.  Thus it is clear that the ALJ complied with 42 U.S.C. § 421(h) in having Dr. Koulianos conduct a review of the medical records and compete a Psychiatric Review Technique[.]").

Given the content of Plaintiff's treatment records in evidence before the ALJ, Plaintiff's lack of treatment subsequent to her largely successful treatment at Auburn University, the strength of Dr. Estock's opinion, and the ALJ's determination that Plaintiff was less than fully credible in her description of her symptoms, the ALJ was amply justified in concluding that Plaintiff's mental impairments were not severe.  Tr. 14-15.   Nor was the ALJ required, as Plaintiff argues, to obtain a consultative examination in order to make that determination.  *See Ingram*, 496 F.3d 1253 at 1269. The Commissioner's decision finding Plaintiff not disabled is supported by substantial evidence in the record and Plaintiff's lone claim of error is without merit.   Accordingly, the Commissioner's decision is due to be affirmed.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.   A separate judgment will issue.

Done this 21st day of March, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE